UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIM. NO. 3:01CR98(SRU) |
| | : | CIV. NO. 3:03CV531(SRU) |
| v. | : | |
| | : | February 17, 2004 |
| | : | |
| MICHAEL TATE | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S REQUEST FOR IMMEDIATE
RELEASE IN HIS MOTION FOR LEAVE TO AMEND**

By pro se pleading entitled Motion For Leave To Amend § 2255
Pleading Pursuant To Fed. R. Civ. Proc. Rule 15 ("Motion To
Amend") dated January 1, 2005, Michael Tate (the "defendant")
requested that the Court permit him to amend his 2255 petition to
assert claims based upon United States v. Booker, 125 S. Ct. 738
(2005). As part of his petition and in reliance on Blakely v.
Washington, the defendant claims that his sentence is illegal and
requests his immediate release.

The Government had no objection to the defendant's amending
his section 2255 petition. Even amended, however, it fails to
state a claim. Because Booker does not apply on collateral
review, the defendant's amended petition should be summarily
dismissed and his request for release denied.

**I.  Procedural History**

On April 10, 2001, United States Magistrate Judge Holly B.
Fitzsimmons issued an arrest warrant for the defendant based upon

a complaint.  (Gov't Ex. 1, at A-3.)[1]  On April 19, 2001, the

defendant was arrested pursuant to the arrest warrant and

presented before United States Magistrate Judge Fitzsimmons.

(Id.)

On April 26, 2001, a federal grand jury sitting in New

Haven, Connecticut, returned a three-count Indictment against the

defendant alleging violations of Title 21, United States Code,

Sections 841(a)(1) and (b)(1)(C).  (Gov't Ex. 2.)

On May 9, 2001, the defendant was arraigned on the

Indictment.  (Gov't Ex. 1, at A-3.)

On July 12, 2001, the defendant pleaded guilty to Count

Three of the Indictment pursuant to a written plea agreement with

the Government.  (Gov't Ex. 1, at A-4.)   In that plea agreement,

the defendant acknowledged that, on March 20, 2001, he knowingly

and intentionally sold crack cocaine to an undercover law

enforcement officer in exchange for cash.  (Gov't Ex. 3, at A-

16.)

Thereafter, the Probation Office prepared a presentence

investigation report ("PSR").  The PSR calculated that the

defendant was a Career Offender and, consequently, that his total

offense level was 29 and that his Criminal History Category was

---

[1] Due to the volume of the exhibits and to avoid confusion, the
Government has not attached the exhibits to this memorandum.  It
respectfully requests that the Court incorporate the exhibits
attached to the Government's earlier response to the defendant's
petition.

VI. (Gov't Ex. 5, at A-85.) It therefore recommended a Sentencing Guideline range of 151-188 months imprisonment, a fine of $1 million, and a two to three year term of supervised release. (Id.)

On January 31, 2002, the District Court held a sentencing hearing. (Gov't Ex. 1, at A-5.) During the sentencing hearing, the District Court departed downward to a Sentencing Guideline range of 84-105 months on the grounds that the defendant's status as a Career Offender substantially over-represented his prior criminal conduct. (Gov't Ex. 5, at A-124 to A-125.) In an exercise of its discretion, the court declined to depart downward on the basis of the defendant's mental and emotional condition. (Id. at A-124.) The District Court sentenced the defendant to a 90 month term of imprisonment to be followed by a three year term of supervised release and a $100 special assessment. (Gov't Ex. 6.) The Court did not impose a fine or order restitution. (Id.)

On February 4, 2002, the defendant timely filed a Notice of Appeal. (Gov't Ex. 7.) Robert G. Golger, who represented the defendant at sentencing and on appeal, subsequently filed a brief pursuant to California v. Anders. (Gov't Ex. 8.) On approximately June 14, 2003, the Government moved for summary affirmance of the defendant's conviction and sentence. (Id.)

On approximately February 7, 2003, the Second Circuit granted the Government's motion. (Gov't Ex. 9.)

3

On approximately March 25, 2003, the defendant filed a petition pursuant to 28 U.S.C. § 2255. In his petition, the defendant principally alleges that: (1) he was not informed of the nature of the charges against him and (2) that the District Court lacked subject matter jurisdiction over his case.

On April 10, 2003, the Government filed its response and requested that the Court deny the petition summarily absent a hearing.

## II. **The Offense**

On March 20, 2001, the defendant sold an undercover police officer approximately .38 grams (net) of crack cocaine in exchange for $100. Before the sale, the undercover police officer paged the defendant using a pager number the defendant previously gave the undercover officer. The defendant met the undercover police officer in Stamford, Connecticut, to conduct the sale.

On several previous occasions in 2000 and 2001, the defendant sold crack cocaine to undercover police officers.

On March 30, 2000, the defendant sold $70 worth of crack cocaine to an undercover police officer.

On April 27, 2000, the defendant sold $100 worth of crack cocaine (net weight. .59 grams) to an undercover police officer.

On May 3, 2000, he sold $100 worth of crack cocaine to an undercover police officer.

4

On May 17, 2000, he sold $100 worth of crack cocaine to an undercover police officer.

On May 23, 2000, he sold $100 worth of crack cocaine to an undercover police officer.

On June 7, 2000, the defendant sold $50 worth of crack cocaine to an undercover police officer.

On February 8, 2001, the defendant sold $100 worth of crack cocaine in the presence of an undercover police officer.

On March 8, 2001, the defendant sold $100 worth of crack cocaine to an undercover police officer.

On March 26, 2001, an undercover police officer spoke to the defendant about obtaining $100 worth of crack cocaine.  The defendant stated that he was "out," but that he would be getting additional crack cocaine that night or the next day.

On March 27, 2001, the undercover police officer again spoke to the defendant about purchasing $100 worth of crack cocaine. The defendant again stated that he was "out" and that he was having supply and money problems.

On April 19, 2001, federal law enforcement officers arrested the defendant.  During the arrest, the officers recovered zip-lock plastic baggies on a night table in the defendant's bedroom. They also recovered several used razor blades and a dish containing cocaine residue.

## III.  **The Defendant's Amended Petition Should Be Dismissed**

In <u>Booker</u>, the Supreme Court held that the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), and determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.   The principle adopted in <u>Booker</u>, like the principle adopted in <u>Blakely</u>, constitutes a "new constitutional rule of criminal procedure" which, under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), is not retroactively applicable to cases, such as the defendant's case, that became final before the decision was announced.

In <u>McReynolds v. United States</u>, 2005 WL 237642 (7th Cir. Feb. 2, 2005), the Seventh Circuit held that "<u>Booker</u> does not apply retroactively to criminal cases that became final before its release on January 12, 2005. . . . <u>Booker</u> itself represents the establishment of a new rule about the federal system. Petitioners' convictions and sentences became final well before <u>Booker</u> was issued, and its approach therefore does not govern these collateral proceedings."   <u>Id</u>. at *5; <u>see</u> <u>Warren v. United States</u>, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005) (Thompson, J.) (<u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> do not "afford[] relief" to the petitioner on collateral attack); <u>see also</u>, <u>e.g.</u>, <u>United States v. Russell</u>, 2005 WL 281183 (E.D. Pa. Feb. 3, 2005)(<u>Booker</u> not retroactive); <u>Tuttamore v. United States</u>, 2005

WL 234368 (N.D. Ohio Feb. 1, 2005) ("To the extent that petitioner relies on Booker, he cannot so prevail, because the decision in Booker is not retroactive for purposes of § 2255 collateral attacks."); Gerrish v. United States, 2005 WL 159642 (D. Me. Jan. 25, 2005)(same); cf. Green v. United States, 2005 WL 237204 (2d Cir. Feb. 2, 2005)(motion to file second or successive application on the basis of Booker denied since Supreme Court has not explicitly made Booker or Blakely retroactive on collateral attack); In re Anderson, 2005 WL 123923 (11th Cir. Jan 21, 2005) ("because Booker, like Blakely and Ring, is based on an extension of Apprendi, defendant cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review."); Hamlin v. United States, 2005 WL 102959 (D. Me. Jan. 19, 2005)(same).

This Court should follow the Seventh Circuit's reasoning in McReynolds and of the other courts which have found Booker unavailable on collateral attack. McReynolds relied on Schriro v. Summerlin, 124 S. Ct. 2519 (2004), a case in which the Supreme Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases that had already become final when Ring was decided. Ring held that, because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death

sentence, which was imposed under the same Arizona law that was
at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural
rule that does not apply retroactively to cases already final on
direct review." Ring, 124 S. Ct. at 2526. The Court explained
that a "new rule" resulting from one of its decisions applies to
convictions that are already final only in limited circumstances.
New *substantive* rules generally apply retroactively, but new
*procedural* rules generally do not – only "watershed rules of
criminal procedure implicating the fundamental fairness and
accuracy of the criminal proceeding" are given retroactive
effect. Id. at 2523 (internal quotation marks omitted). The
Court concluded that Ring's holding was properly classified as
procedural, rather than substantive, because it did not alter the
range of conduct or the class of persons subject to the death
penalty in Arizona; instead, it merely changed the method of
determining whether the defendant engaged in that conduct. See
id. at 2523-24. The Court also held that Ring did not fall
within Teague's narrow exception for "watershed rules" of
criminal procedure. The Court explained that, to qualify as a
watershed rule, a new procedural rule must be one "without which
the likelihood of an accurate conviction is *seriously*
diminished." See id. at 2523 (quoting Teague, 489 U.S. at 313)
(emphasis added in Summerlin). The Court held that Ring did not

8

announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminished the accuracy of capital sentencing proceedings. Id. at 2424-25.

Consistent with the reasoning of Summerlin, the Second Circuit has held, like every other Court of Appeals to have considered the issue, that Apprendi is not a procedural rule that falls within the "watershed rile" exception and thus is not retroactively applicable to cases on collateral review. See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003).[2]  Importantly, the Second Circuit in Coleman held that Apprendi was not a watershed rule despite the difference between using the jury and the judge as factfinder and despite the difference in the relevant burdens of proof, that is a preponderance-of-the-evidence standard versus a beyond-a-reasonable-doubt standard.

In Coleman, the Second Circuit noted that, in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also

---

[2] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001).

alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a groundbreaking occurrence." <u>Coleman</u>, 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "<u>Apprendi</u> did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." <u>Id</u>. at 89 (internal quotation marks omitted).  The <u>Colman</u> Court's is firmly grounded in earlier decisions of the Supreme Court and the Second Circuit holding that <u>Apprendi</u> errors may be reviewed for harmlessness, not structural error – a conclusion that would have stood in tremendous tension with a determination that <u>Apprendi</u> announced a watershed rule, <u>see id</u>. at 89-90 – that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty." <u>Id.</u> at 88 (internal quotation marks and citations omitted).

    <u>Coleman</u> involved a determination that a change in the identity of the relevant fact-finder *and* an increase in the burden of proof were insufficient to constitute a "watershed" rule of criminal procedure.  Because <u>Booker</u> did not entail either of those changes – but instead maintained the identity of the fact-finder at sentencing as well as the preponderance of the evidence standard – it follows, *a fortiori*, that <u>Booker</u>'s rule

falls short of being a "watershed" rule.  Indeed, as the Second
Circuit recently posited in <u>United States v. Crosby</u>, 2005 WL
240916 (2d Cir. Feb. 2, 2005), the district court might very well
have imposed the same sentence regardless of whether the
Guidelines were binding (as before <u>Booker</u>) or advisory (after
<u>Booker</u>), and that district judges might impose higher *or* lower
sentences in <u>Booker</u>'s wake.  In short, <u>Booker's</u> holding simply
does not shift the foundations of American constitutional law and
hence does not apply retroactively on collateral attack.

<u>Booker</u> entailed an extension of the procedural rule
announced in <u>Apprendi</u> that factual findings that increase the
maximum penalty permitted by law must be found by a jury beyond a
reasonable doubt. The Supreme Court has defined a "new rule"
under <u>Teague</u> as one that was not "'*dictated* by precedent existing
at the time the defendant's conviction became final.'"  <u>Graham v.
Collins</u>, 506 U.S. at 467 (quoting <u>Teague</u>, 489 U.S. at 301
(emphasis in <u>Teague</u>)); <u>see</u> <u>Sawyer v. Smith</u>, 497 U.S. 227, 234
(1990).  Subsequent decisions have made clear that a rule may be
"new" despite the fact that earlier cases supported it, <u>Sawyer</u>,
497 U.S. at 236, "or even control or govern" it, <u>Saffle v. Parks</u>,
494 U.S. 484, 491 (1990).  Under that definition, <u>Booker</u>
announced a new rule for <u>Teague</u> purposes.

Moreover, while not directly addressing the retroactivity of
its extension of <u>Blakely</u> to the Sentencing Guidelines and its
holding that those Guidelines would be advisory, the "merits

11

majority" of <u>Booker</u> clarified that its holding on the merits and
the remedy of the Sixth Amendment claim was to apply "to all
cases on direct review." 2005 WL 50108 at *29 (citing <u>Griffith v.</u>
<u>Kentucky</u>, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct
of criminal prosecutions is to be applied retroactively to all
cases . . . pending on direct review or not yet final, with no
exception for cases in which the new rule constitutes a 'clear
break' with the past."). This statement has already been read by
one court, in the context of a successive petition, as limiting
the application of the rule to cases in the direct review
pipeline especially in view of the fact that the Supreme Court
has already concluded that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002),
a case which applied the principle of <u>Apprendi</u> to death sentences
imposed on the basis of aggravating factors, was not to be
applied retroactively to cases once they were final on direct
review. <u>See</u> <u>Hamlin v. United States</u>, 2005 WL 102959 at *1 (citing
<u>Schriro v. Summerlin</u>, 124 S. Ct. at 2519, 2526 (2004)("<u>Ring</u>
announced a new procedural rule that does not apply retroactively
to cases already final on direct review.")); <u>see</u> <u>also</u> <u>Stevens v.</u>
<u>United States</u>, 2005 WL 102958 (D. Me. Jan 18, 2005).

    In short, <u>Booker</u>, which represents an extension of <u>Apprendi</u>,
does not apply on collateral review.

**IV.  <u>Conclusion</u>**

    For the reasons stated in this and the Government's earlier

12

response, the Government respectfully requests that petitioner's section 2255 petition seeking to vacate his sentence should be

summarily denied without a hearing.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

JAMES J. FINNERTY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
United States Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604
Tel: (203) 696-3000
Federal Bar No. CT15203

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing has been
mailed via First Class Mail, postage prepaid, on February 17,
2004 to:

Michael Tate
Inmate No. 14176-014
P.O. Box 7000
FCI Fort Dix
Fort Dix, New Jersey 08640

_____
JAMES J. FINNERTY
ASSISTANT UNITED STATES ATTORNEY

14