```
1                    UNITED STATES COURT OF APPEALS
2                        FOR THE SECOND CIRCUIT
3
4
5                          August Term, 2004
6
7     (Argued: October 19, 2004        Decided: April 8, 2005)
8
9                        Docket No. 03-2446-pr
10
11
12     _____
13
14     MIGUEL GUZMAN,
15
16               Petitioner-Appellant,
17
18               -v.-
19
20     UNITED STATES OF AMERICA,
21
22               Respondent-Appellee.
23
24
25     _____
26
27
28     Before:   JACOBS, SOTOMAYOR, and HALL, Circuit Judges.
29
30          Petitioner appeals from the denial of
```

31     postconviction relief by the United States District

32     Court for the Southern District of New York

33     (Scheindlin, J.).  We previously affirmed the

34     judgment of the district court, but held the mandate

35     pending the Supreme Court's decision in United States

36     v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005).  We

37     now hold that Booker does not apply retroactively to

38     cases on collateral review.  AFFIRMED.

```
 1
 2                              RUTH M. LIEBESMAN, New
 3                              York, NY, for Appellant.
 4
 5                              DANIEL L. STEIN,
 6                              Assistant United States
 7                              Attorney, Southern
 8                              District of New York, New
 9                              York, NY (DAVID N.
10                              KELLEY, United States
11                              Attorney, and ROBIN L.
12                              BAKER and LAURA
13                              GROSSFIELD BIRGER,
14                              Assistant United States
15                              Attorneys, on the
16                              briefs), for Appellee.
17
18  DENNIS JACOBS, Circuit Judge:
19
20       Petitioner Miguel Guzman appeals from the denial
21  of postconviction relief by the United States
22  District Court for the Southern District of New York
23  (Scheindlin, J.).  We previously affirmed the
24  judgment of the district court, but held the mandate
25  pending the Supreme Court's decision in United States
26  v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005).  We
27  now hold that Booker does not apply retroactively to
28  cases on collateral review, and therefore affirm.
29
30                         BACKGROUND
31       Guzman was convicted in 1998 on numerous
32  racketeering and drug-trafficking counts and
```

-2-

1   sentenced to six life terms plus 145 years; the life

2   terms were imposed pursuant to the Federal Sentencing

3   Guidelines, and were based in part on factual

4   findings made by the district judge.  On March 23,

5   2001, this Court affirmed the judgment, and on

6   October 1, 2001, the Supreme Court denied certiorari,

7   rendering Guzman's conviction final.  See Beard v.

8   Banks, ___ U.S. ___, ___, 124 S. Ct. 2504, 2510

9   (2004).

10   Guzman subsequently filed a motion pursuant to 28

11   U.S.C. § 2255 collaterally attacking his sentence,

12   and was denied relief in an order entered by Judge

13   Scheindlin on June 20, 2003.  We affirmed by order

14   dated October 25, 2004, but held the mandate pending

15   the Supreme Court's decision in United States v.

16   Booker.  Guzman v. United States, 112 Fed. Appx. 766,

17   2004 WL 2378810 (2d Cir. Oct. 25, 2004).  After

18   Booker was issued, we solicited briefing on the

19   applicability of Booker to Guzman's appeal.

20   We now expand the certificate of appealability

21   ("COA") to include the issues raised by Booker.  See

22   28 U.S.C. § 2253(c)(2) (COA "may issue . . . if the

-3-

1    applicant has made a substantial showing of the

2    denial of a constitutional right"); Slack v.

3    McDaniel, 529 U.S. 473, 483-84 (2000) (under §

4    2253(c)(2), COA appropriate where, inter alia,

5    reasonable jurists could debate the proper resolution

6    of the issue); see also Green v. Mazzucca, 377 F.3d

7    182, 183 (2d Cir. 2004) (per curiam) (observing that

8    this Court can "expand a petitioner's COA when

9    appropriate").  For the following reasons, we hold

10   that Booker is not retroactive: it does not apply to

11   cases on collateral review where the defendant's

12   conviction was final as of January 12, 2005, the date

13   that Booker issued.

14

15                    **DISCUSSION**

16        Booker [i] held that the Guidelines violated the

17   Sixth Amendment to the extent that they allowed the

18   maximum sentence authorized by a guilty plea or a

19   verdict to be increased based on findings of fact

20   (other than the fact of a prior conviction) made by

21   the judge, 125 S. Ct. at 755-56; [ii] held that the

22   remedy was to make the Guidelines advisory, id. at

-4-

1    756-57; and [iii] expressly made these holdings

2    applicable to all cases pending on direct review, id.

3    at 769.  But Booker "made no explicit statement of

4    retroactivity to collateral cases."  Green v. United

5    States, 397 F.3d 101, 103 (2d Cir. 2005) (per

6    curiam).

7         The several courts of appeals that have

8    considered the retroactivity question have held that

9    Booker is not retroactive.  See Humphress v. United

10   States, 398 F.3d 855, 860 (6th Cir. 2005); McReynolds

11   v. United States, 397 F.3d 479, 481 (7th Cir. 2005);

12   United States v. Price, 400 F.3d 844, 845 (10th Cir.

13   2005); Varela v. United States, 400 F.3d 864, 868

14   (11th Cir. 2005) (per curiam); see also Hamdani v.

15   United States, No. Civ. A. 04-3332(DGT), ___ F. Supp.

16   2d ___, 2005 WL 419727, at *2 (E.D.N.Y. Feb. 22,

17   2005) (Trager, J.).  We agree.

18        Under the analysis set forth in Teague v. Lane,

19   489 U.S. 288 (1989) (plurality opinion), and as later

20   developed, a new rule of constitutional law does not

21   apply retroactively to cases on collateral review

22   unless the rule is substantive or a "watershed" rule

-5-

1    of procedure that affects "the fundamental fairness

2    and accuracy of the criminal proceeding." Schriro v.

3    Summerlin, ___ U.S. ___, 124 S. Ct. 2519, 2522-23

4    (2004) (quotation omitted).

5

6    A.    *Booker Established a New Rule*

7    "[A] case announces a new rule if the result was

8    not *dictated* by precedent . . . ." Teague, 489 U.S.

9    at 301. Precedent "dictates" the result in a

10   subsequent case where that result would be "'apparent

11   to *all reasonable jurists*.'" Banks, 124 S. Ct. at

12   2511 (quoting Lambrix v. Singletary, 520 U.S. 518,

13   528 (1997)) (emphasis added). Guzman argues that the

14   result in Booker was compelled by Apprendi v. New

15   Jersey, 530 U.S. 466 (2000), which had held that any

16   fact (other than the fact of a prior conviction) that

17   triggers a sentence in excess of the prescribed

18   statutory maximum must be proved to a jury beyond a

19   reasonable doubt. If Booker were simply Apprendi

20   again, we would not need to determine the

21   retroactivity of Booker under Teague: since Guzman's

22   conviction was not final when Apprendi issued, Guzman

1  would be afforded any relief he could get under

2  Booker.

3       However, the result in Booker was not dictated by

4  Apprendi or, for that matter, the Court's later

5  decision in Blakely v. Washington, ___ U.S. ___, 124

6  S. Ct. 2531 (2004) (striking down part of Washington

7  State's sentencing scheme under Apprendi). It cannot

8  be said that the result in Booker was apparent to

9  "all reasonable jurists"; in Booker itself,

10 dissenters undertook to explain why the holding in

11 Booker was not compelled by Apprendi or Blakely. See

12 Booker, 125 S. Ct. at 805-07 (Breyer, J., joined by

13 Rehnquist, C.J., and O'Connor & Kennedy, JJ.,

14 dissenting in part) (arguing that "[l]egal logic" did

15 not require the extension of Apprendi and Blakely to

16 the Guidelines "for there are key differences").

17 Moreover, "[t]hat the federal judiciary [was] deeply

18 divided on the issue of whether the rule announced in

19 Blakely applie[d] to the Federal Guidelines lends

20 further support to the conclusion that Booker

21 announced a new rule." Humphress, 398 F.3d at 861

22 (citing cases). Since Booker announced a new rule,

-7-

1    we must decide whether either of the Teague

2    exceptions to nonretroactivity applies.

3

4         B.   Booker Did Not Establish a Substantive Rule

5         Generally, substantive rules "narrow the scope of

6    a criminal statute by interpreting its terms" or

7    "place particular conduct or persons covered by [a

8    criminal] statute beyond the State's power to

9    punish." Summerlin, 124 S. Ct. at 2522.  Such rules

10   "apply retroactively because they necessarily carry a

11   significant risk that a defendant stands convicted of

12   an act that the law does not make criminal or faces a

13   punishment that the law cannot impose upon him." Id.

14   at 2522-23 (quotation omitted).

15        In Summerlin, the Court was faced with whether a

16   substantive rule was established by Ring v. Arizona,

17   536 U.S. 584 (2002), which held that "a sentencing

18   judge, sitting without a jury, [may not] find an

19   aggravating circumstance necessary for imposition of

20   the death penalty," id. at 609.  The Court reasoned

21   that because Ring did not "alter the range of conduct

22   . . . subjected to the death penalty," but merely

-8-

1    "altered the range of permissible methods for

2    determining whether a defendant's conduct is

3    punishable by death, requiring that a jury rather

4    than a judge find the essential facts bearing on

5    punishment," the rule was a "prototypical procedural

6    rule[.]" Summerlin, 124 S. Ct. at 2523.  Likewise,

7    Booker did not alter the range of conduct subject to

8    any sentence.  See McReynolds, 397 F.3d at 481 ("No

9    conduct that was forbidden before Booker is permitted

10   today; no maximum available sentence has been

11   reduced."); see also Coleman, 329 F.3d at 87 (holding

12   that Apprendi established a procedural rule because

13   "[t]he substance of the crime remains the same; only

14   the trier of fact and the standard of proof have

15   changed").  In short, Booker did not establish a

16   substantive rule.

17

18         C.   *Booker Did Not Establish a Watershed Rule of*
19               *Procedure*
20
21       A new procedural rule applies retroactively only

22   if it is a watershed rule "implicating the

23   fundamental fairness and accuracy of the criminal

24   proceeding." Summerlin, 124 S. Ct. at 2523

1    (quotation omitted).  Such a rule "must be one

2    'without which the likelihood of an accurate

3    conviction is seriously diminished.'"  Id. (quoting

4    Teague, 489 U.S. at 313).  This "class of rules is

5    extremely narrow."  Id.  No such watershed rule has

6    been identified by the Court since that standard was

7    adopted.  See Coleman, 329 F.3d at 89.  The Court has

8    pointed to Gideon v. Wainright, 372 U.S. 335 (1963)

9    (establishing defendants' right to counsel in

10   criminal trials for serious crimes), to illustrate

11   the type of case that would fit this exception.  See

12   Saffle v. Parks, 494 U.S. 484, 495 (1990).

13        Booker did not establish a watershed rule because

14   "the only change [is] the degree of flexibility

15   judges . . . enjoy in applying the guideline system."

16   McReynolds, 397 F.3d at 481; see also Coleman, 329

17   F.3d at 89 (holding that Apprendi did not announce a

18   watershed rule, in part because it did not implicate

19   "bedrock procedural elements" essential to

20   fundamental fairness, "[a]lthough [it] altered

21   certain aspects of indictments, trials, and

22   sentencing proceedings").

23        In Summerlin, the Court held that Ring did not

-10-

1   establish a watershed rule because it was

2            implausible that judicial factfinding so
3            seriously diminishes accuracy as to produce
4            an impermissibly large risk of injustice.
5            When so many presumably reasonable minds
6            continue to disagree over whether juries are
7            better factfinders at all, we cannot
8            confidently say that judicial factfinding
9            seriously diminishes accuracy.
10
11   124 S. Ct. at 2525 (quotation and emphasis omitted).

12   That reasoning applies here a fortiori.  The

13   procedural defect identified in Booker is that

14   sentence-enhancing factors were found by judges

15   rather than by juries, and by a preponderance rather

16   than beyond a reasonable doubt; but the remedy--to

17   render the Guidelines advisory--vested greater

18   discretion in judges, not less.  See McReynolds, 397

19   F.3d at 481 ("The remedial portion of Booker held

20   that decisions about sentencing factors will continue

21   to be made by judges, on the preponderance of the

22   evidence, an approach that comports with the Sixth

23   Amendment so long as the guideline system has some

24   flexibility in application.").

25      Finally, the chief goal of the mandatory

26   Guidelines project was to reduce the "disparity and

27   inherent unfairness" caused by discretionary

-11-

1    sentencing.  Kenneth R. Feinberg, Federal Criminal

2    Sentencing Reform: Congress and the United States

3    Sentencing Commission, 28 Wake Forest L. Rev. 291,

4    294-96 (1993); accord Booker, 125 S. Ct. at 783-86 &

5    n.14 (Stevens, J., joined by Souter, J., dissenting

6    in part); Stephen Breyer, Federal Sentencing

7    Guidelines Revisited, 11 Fed. Sent. Rep. 180 (1999),

8    available at 1999 WL 730985, at *1 ("The Guidelines

9    sought greater fairness and honesty in sentencing.

10   In seeking 'greater fairness,' Congress, acting in

11   bipartisan fashion, intended to respond to complaints

12   of unreasonable disparity in sentencing--that is,

13   complaints that differences among sentences reflected

14   not simply different offense conduct or different

15   offender history, but the fact that different judges

16   imposed the sentences.").  We cannot say that the

17   Guidelines actually advanced that goal, and mitigated

18   unwarranted disparity and unfairness.  By the same

19   token, we cannot assume that the mandatory Guidelines

20   system under which Guzman was sentenced seriously

21   diminished the accuracy or fundamental fairness of

22   the sentencing process.  In sum, the rule established

23   by Booker "has none of the primacy and centrality of

-12-

1    the rule adopted in Gideon or other rules which may

2    be thought to be within the exception."  Saffle, 494

3    U.S. at 495.

4
5
6                        **CONCLUSION**
7
8        For the reasons stated above, Booker is not

9    retroactive, i.e., it does not apply to cases on

10   collateral review where the defendant's conviction

11   was final as of January 12, 2005, the date that

12   Booker issued.  The judgment of the district court is

13   AFFIRMED.  The Clerk is directed to issue the mandate

14   forthwith.