UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIM. NO. 3:01CR98 (SRU) |
| MICHAEL TATE | |

### RULING ON DEFENDANT'S PETITION UNDER 28 U.S.C. § 2255 AND DEFENDANT'S MOTION UNDER FED. R. CIV. P. 60(B)

On July 12, 2001, Michael Tate pled guilty to one count of knowingly and intentionally possessing with the intent to distribute, and distributing, a mixture and substance that contained a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). At Tate's change of plea hearing he affirmed that he understood the nature of the charges against him, that he received a copy of his indictment and discussed it with his lawyer, and that he understood the maximum penalties that could be imposed if he pled guilty. (Gov't Ex. 4 at 7-8.) Tate declared that he knew he was giving up his right to a jury trial, and all associated ancillary rights. (Gov't Ex. 4 at 9-11, 13.) Tate said that he understood his written plea agreement and that he agreed with the factual allegations contained therein. (Gov't Ex. 4 at 17.) Tate affirmed that he possessed "cocaine base or crack cocaine," and that he sold it to other individuals. (Gov't Ex. 4 at 24.)

On January 31, 2002, I sentenced Tate to 90 months' imprisonment, to be followed by a three-year term of supervised release, as well as a statutorily mandatory $100 special assessment. (Gov't Ex. 6.) Tate, through his counsel, argued that he should not be sentenced as a career offender, because he had not previously been imprisoned for any extensive period of time. (Gov't Ex. 5 at 13-16.) Tate's counsel also argued for a downward departure due to childhood psychological abuse. (Gov't Ex. 5 at 17.) Tate's psychiatric evaluation, however, did not show that he suffered from any diagnosable psychological infirmity. (Gov't Ex. 5 at 19.) I declined to

downwardly depart on the ground of past psychological abuse. (Gov't Ex. 5 at 52.) I did depart from the Guideline range called for as a result of Tate's classification as a career offender. (Gov't Ex. 5 at 53.)

At the sentencing hearing, Tate also argued that he had sold only freebase, not crack cocaine. (Gov't Ex. 5 at 36.) When I asked if he was denying his guilt, Tate asserted that he was not, but that he wanted to raise the issue so that it would be preserved for an appeal. (Gov't Ex. 5 at 38.)

Tate filed a timely notice of appeal on February 4, 2002. (Gov't Ex. 7.) On February 10, 2003 the Court of Appeals issued a Summary Order affirming Tate's conviction and sentence. (Gov't Ex. 9.) On March 25, 2003, Tate filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. On March 25, 2003, Tate also filed a motion seeking relief from prior judgment under Fed. R. Civ. P. 60(b). For reasons that follow, both motions are denied.

To obtain relief under 28 U.S.C. § 2255, Tate must demonstrate that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Tate's motion raises seven questions of law: (1) Can a criminal defendant challenge his sentence in the sentencing court under Fed. R. Civ. P. 60(b)? (2) Was Tate convicted under an unconstitutional law? (3) Did this court lack subject matter jurisdiction over Tate's indictment? (4) Did defense counsel render ineffective assistance prior to Tate's guilty plea by failing to perform an adequate factual investigation? (5) Did Tate understand the charges against him when he pled guilty? (6) Was Tate deprived of his right to jury trial? (7) Was Tate's sentence improper?

**I. Applicability of Fed. R. Civ. P. 60(b)**

Rule 60(b) of the Federal Rules of Civil Procedure allows a party to seek relief from a final judgment in a civil case. Here, Tate is trying to use Rule 60(b) to reopen his criminal conviction. Tate also challenges his underlying criminal conviction with a section 2255 petition. Because Rule 60(b) provides relief from civil judgments, and Tate now seeks relief from his criminal conviction and sentence, a Rule 60(b) motion cannot provide the relief that he seeks.

Instead, the Federal Rules of Criminal Procedure apply to Tate's criminal conviction. Rule 33 of the Federal Rules of Criminal Procedure allows a defendant to move for a new trial, but unless that motion is based on new evidence, it must be made within seven days of the finding of guilt. Tate does not argue that any new evidence makes his conviction unjust, and his motion was not made within seven days of the finding of guilt. Therefore, a Rule 33 motion would be inappropriate at this time as well. *See, e.g., United States v. Consiglio*, 391 F. Supp. 564, 568 (D. Conn. 1975).

Because Tate is a *pro se* litigant, I will construe his pleadings liberally and consider the strongest arguments that they raise. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bertin v. United States*, 478 F.3d 489, 491-92 (2d Cir. 2007). Tate makes arguments within the context of his Rule 60(b) motion that support his petition under 28 U.S.C. § 2255. Therefore, although Tate's Rule 60(b) motion is procedurally improper, I will consider the substantive arguments he makes in that motion insofar as they relate to his section 2255 petition.

## II. Constitutionality of Title 21 of the United States Code

Tate's argument that he was convicted under an unconstitutional law is unfounded. The Second Circuit has held that Congress properly exercised its Commerce Clause power when it outlawed possession and distribution of controlled substances under 21 U.S.C. § 841(a)(1). *United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998).

3

**III. Subject Matter Jurisdiction**

Tate argues that I lacked subject matter jurisdiction, and that a state court should have properly heard his case. Tate, however, confuses the United States' territorial jurisdiction with its subject matter jurisdiction. Although it is true that Congress generally can only legislate within certain territories enumerated in the Constitution, the Constitution also gives Congress power to legislate throughout the United States by exercising its enumerated powers. One such power is the Commerce Clause, pursuant to which Congress passed 21 U.S.C. § 841.

Under 18 U.S.C. § 3231, the federal courts enjoy jurisdiction over "all offenses against the laws of the United States." As discussed in Part II of this opinion, Congress properly exercised its Commerce Clause power when it enacted 21 U.S.C. § 841. Because 21 U.S.C. § 841 is a "law of the United States" for the purposes of 18 U.S.C. § 3231, this court properly exercised jurisdiction over Tate's criminal proceeding.

**IV. Ineffective Assistance of Counsel**

The Constitution affords a right to effective assistance of counsel in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice. Both prongs of the test must be met." *United States v. Jones*, 455 F.3d 134, 151 (2d Cir. 2006). In addressing the adequacy of representation, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

A section 2255 motion does not automatically entitle a petitioner to a hearing; instead, the district court can exercise its discretion and common sense in determining whether a hearing

4

is necessary. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir 1977). When the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a hearing need not be held. 28 U.S.C. § 2255; *see Williams v. United States*, 503 F.2d 995, 998 (2d Cir. 1974). "The petitioner must be responsible for setting forth specific facts which he or she is in a position to establish by competent evidence." *Newfield*, 565 F.2d at 207.

Tate argues that his counsel was ineffective for the following reasons: (1) counsel failed to file any pre-trial motions that would adequately subject the government's case to the adversarial process, (2) counsel failed to conduct an independent investigation of the facts, (3) counsel failed to argue that his sentencing did not comport with Rule 11 of the Federal Rules of Criminal Procedure.

Tate's blanket assertion that counsel was ineffective for failing to file pre-trial motions does not adequately demonstrate that counsel acted unreasonably. Tate has not stated which pre-trial motions he would have liked his attorney to file. Because Tate voluntarily pled guilty, it is not evident that any pre-trial motions, if filed, would have changed the outcome of his case. Considering the evidence that the government was ready to present against Tate, as detailed at his change of plea hearing (*see* Gov't Ex. 4 at 22-24), I cannot conclude that his counsel made an unreasonable decision not to file pre-trial motions. Tate's guilty plea resulted in a sentence far below the statutory maximum, and his acceptance of responsibility resulted in a lower sentence under the sentencing guidelines.

Tate's argument that his counsel failed to conduct an independent investigation of the facts also fails. First, Tate argues that his counsel could have discovered that he was being prosecuted under an unconstitutional law. Because 21 U.S.C. § 841 is constitutional, that argument fails. In any event, the law's constitutionality is a legal, not a factual, question. If

5

Tate's counsel had investigated the facts of his case in a different manner, Tate's conduct and the facts of his case would still have constituted a violation of the law, even if it were later held to be unconstitutional.  Second, Tate argues that counsel should have done an investigation into the chemical composition of the substance that he admitted distributing.  The record shows, however, that the DEA lab report found a detectable amount of cocaine base in the substance that was in Tate's possession (Gov't Ex. 4 at 23), and Tate has not argued that an independent investigation would have shown otherwise.  In fact, at his change of plea hearing, Tate voluntarily stipulated that he possessed and distributed "cocaine base or crack cocaine," so I cannot find that his attorney made an unreasonable decision not to independently investigate the identity of the substance.

     Furthermore, even if Tate's counsel acted unreasonably, Tate was not prejudiced by the failure to undertake an independent investigation.  At his sentencing, Tate expressed his opinion that the substance he possessed was "freebase" and not "crack."  However, even if his counsel could have established that Tate possessed freebase, the distinction between crack cocaine and freebase is immaterial under the law; both constitute cocaine base.  Tate was convicted under 21 U.S.C. § 841(a) and sentenced under section 841(b)(1)(C), which applies to any Schedule I or II controlled substance.  Cocaine in any form is a Schedule II drug and would sustain a sentence under section 841(b)(1)(C).  Because any form of cocaine base would have sustained his conviction and sentence, and because Tate does not dispute that the substance he possessed contained cocaine base, he was not prejudiced by the failure to do an independent investigation of the facts.

     Tate's assertion that counsel failed to inform him of the law in relation to the facts also fails.  Tate affirmed under oath at his change of plea hearing that his counsel had explained the

law to him. At that hearing, the government explained the elements that it would have to prove at trial and the evidence it intended to use to prove those elements. I questioned Tate to comply with Rule 11 and to satisfy myself that Tate understood the law to which he pled guilty and the facts that he admitted. Tate declared that he understood the law and the admitted facts. (Gov't Ex. 4 at 24.)

In response to a Rule 11 allocution, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Panuccio v. Kelly*, 927 F.2d 106, 110-11 (2d Cir. 1991) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Aside from conclusory allegations that he believed his counsel would not effectively represent him at trial, Tate has not shown that he can prove there is a factual basis to rebut the strong presumption that he was truthful when he declared that he understood the law in relation to the facts of his case.

Finally, Tate argues that his counsel was ineffective for failure to argue that the hearing where he entered his guilty plea did not comply with the requirements of Rule 11 of the Federal Rules of Criminal Procedure. Tate does not set forth specific facts showing that would support a finding of noncompliance with Rule 11. Instead, he makes the conclusory statement that I failed to ask him directly whether his plea was voluntary; that statement is belied by the transcript of the hearing. Indeed, the transcript shows that Tate's change of plea hearing satisfied the requirements of Rule 11. Tate's counsel cannot now be held ineffective for not objecting to a proper hearing.

## V. Defendant's Understanding of Charges

Independent of his ineffective assistance of counsel claim, Tate claims that his plea was involuntary because he did not understand the charges against him. Tate argues that his denial,

7

during the sentencing hearing, that he possessed crack cocaine showed that he did not understand the law in relation to the facts when he pled guilty. I disagree.

"[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). The safeguards of Rule 11 of the Federal Rules of Criminal Procedure help ensure that a plea is voluntary. *Id.* at 465. "The more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." *Id.*

During Tate's change of plea hearing, the government explained the elements that it would have to prove beyond a reasonable doubt to a jury in order to obtain a criminal conviction at trial on charges that Tate violated 28 U.S.C. § 841. (Gov't Ex. 4 at 21.) The government also described the facts that it would use to prove Tate's guilt if the case went to trial. (Gov't Ex. 4 at 22-24.) Tate declared that he agreed with the government's allegations, and that he possessed cocaine base or crack cocaine, which he sold to other individuals. (Gov't Ex. 4 at 24.)

At Tate's sentencing, he said that he disagreed with the government's characterization of the substance he sold as "crack." He believed it was "freebase." (Gov't Ex. 5 at 36.) When I asked Tate if he was denying that he was guilty of the charge against him, he declared that he was not. (Gov't Ex. 5 at 38.) Tate's counsel explained that Tate was trying to preserve an issue for appeal. He wanted to be able to appeal his conviction if the Second Circuit ever decided that the government would have to prove the presence of sodium bicarbonate to prove that a defendant possessed crack cocaine. (Gov't Ex. 5 at 38.)

Tate has not shown that his conviction was constitutionally defective. Although it is true that a defendant cannot properly plead guilty if he does not understand the charges against him, the transcript from the change of plea hearing shows that the law was explained to Tate and he declared that he understood it. The transcript shows that I complied with the requirements of Rule 11 to ensure that Tate's plea was voluntary. Tate agreed with the government's recitation of his criminal conduct. It was not until the sentencing that Tate expressed any disagreement with the basis of his guilty plea, and he stated that he only brought up the issue to preserve it for subsequent appeal if the law ever changes. Tate contradicts himself by arguing that he did not understand the law in relation to the facts, while also arguing that he raised an issue at his sentencing to preserve it in case the law ever changes. A person must understand what the law currently says in order to have a hope or expectation that it will change to say something else.

## VI. Right to Jury Trial

Tate's argument that he could not waive his right to a jury trial in a federal criminal case has no basis. It is well-established that a defendant facing federal criminal charges may waive his right to trial by jury. *See Duncan v. Louisiana*, 391 U.S. 145, 158 (1968) ("we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial"). A voluntary and knowing guilty plea is a waiver of the right to a jury trial. *Brady v. United States*, 397 U.S. 742, 748 (1970).

At Tate's change of plea hearing, I fully explained his right to trial by jury. I explained that he would be presumed innocent at trial, that the government would bear the burden of proof beyond a reasonable doubt, that he would have the opportunity to examine witnesses, and that he would be protected from self-incrimination. (Gov't Ex. 4 at 9-11, 13.) Tate testified that he understood that he was waiving his right to trial by jury by pleading guilty. (Gov't Ex. 4 at 13.)

Therefore, I conclude that Tate was fully informed that he would waive his right to trial by jury by pleading guilty, and that he voluntarily chose to do so.

## VII. Sentencing

In Tate's Motion to Amend his section 2255 petition, filed January 14, 2005, he argues that his sentence improperly exceeded the statutory maximum without a jury finding of aggravating factors. In his Traverse, filed March 4, 2005, Tate clarifies that his argument is based on the fact that he was sentenced for possessing crack cocaine and as a career offender without a jury finding either of those facts.

When a defendant admits facts, they can be used against him in sentencing even without a jury finding. *Blakely v. Washington*, 542 U.S. 296, 303 (2004). The discretion of the sentencing judge to make certain findings regarding prior convictions was recognized both before and after *Booker* rendered the federal sentencing guidelines advisory. *Compare United States v. Garcia*, 240 F.3d 180, 184 (2001), *with United States v. Booker*, 543 U.S. 220, 244 (2005), *and United States v. Estrada*, 428 F.3d 387, 390-91 (2d Cir. 2005).

Tate's argument that he was improperly sentenced must fail. When Tate pled guilty, he admitted all of the elements necessary for a conviction under 21 U.S.C. § 841(a) and for a sentence below the statutory maximum set out in section 841(b)(1)(C). Tate's sentence is within the statutory range set out in section 841(b)(1)(C), and the facts he admitted in addition to his criminal record justify his sentence under the sentencing guidelines. In fact, but for a discretionary downward departure in his favor, Tate could have received a longer term of imprisonment based on the facts that he admitted. Therefore, Tate cannot argue logically that I relied on facts other than the ones he admitted in order to increase his sentence above the statutory maximum.

In addition, the mandatory nature of the sentencing guidelines at the time I sentenced Tate did not affect my sentencing decision. Considering Tate's sentence now, in light of the factors set forth in 18 U.S.C. § 3553(a), I would impose the same sentence today that I did at the time of his sentencing.

**VIII. Conclusion**

For the foregoing reasons, Tate's Petition to Vacate, Set Aside or Correct (**doc. #41**) and his Rule 60(b) motion (**doc. #42**) are both DENIED. Tate has not made a substantial showing of the denial of a constitutional right; thus a certificate of appealability will not issue.

It is so ordered.

Dated at Bridgeport, Connecticut, this 7th day of December 2007.

    /s/ Stefan R. Underhill
    Stefan R. Underhill
    United States District Judge